UNITED STATES of America, Appellee,

v.

Anderson ATKINSON,
Defendant-Appellant.

No. 673, Docket 85–1336.

United States Court of Appeals,
Second Circuit.

Argued Jan. 13, 1986.

Decided April 18, 1986.

Richard Reeve, Asst. Fed. Public Defender, D. Conn., New Haven, Conn. (Thomas G. Dennis, Federal Public Defender, D. Conn., of counsel), for defendant-appellant.

Calvin B. Kurimai, Asst. U.S. Atty., D. Conn., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., of counsel), for appellee.

Before CARDAMONE, and PRATT, Circuit Judges, and WYZANSKI, District Judge of the United States District Court for the District of Massachusetts, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Anderson Atkinson pled guilty to three counts of bank robbery and, as part of his sentence, was ordered by the United States District Court for the District of Connecticut, Warren G. Eginton, *Judge,* pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579, 3580, to make restitution to the three victim banks of the full amount of their losses. Atkinson argues that in ordering full restiution the district judge did not comply with the provisions of the VWPA because he failed to consider all the statutory factors and that, in any event, ordering full restitution here, when defendant was indigent, was an abuse of discretion. We remand to allow Judge Eginton to perform the statutory balancing mandated by congress in 18 U.S.C. § 3580(a) and to consider whether, under 18 U.S.C. § 3579(e)(1), any third-party payments have been or will be made to any of the banks as reimbursement for losses sustained in the robberies.

## BACKGROUND

Atkinson and a codefendant were charged with the commission of armed robberies of three different banks during December 1983 and January 1984, in violation of 18 U.S.C. §§ 2113(a), (b), (d). Atkinson ultimately pled guilty to three counts of unarmed bank robbery in violation of 18 U.S.C. § 2113(a) and was sentenced to 20 years on each count, to run concurrently with each other as well as with a prior state sentence he was already serving. In addition, Atkinson was ordered to make restitution to the three banks: $3,196.76 to Connecticut Bank & Trust, $4,117.00 to Dime Savings Bank, and $22,500.00 to American National Bank, for a total restitution amount of $29,813.76. In arriving at the restitution amounts for each bank, the district judge relied on undisputed figures in the victim impact statements that were supplied by the respective banks and incorporated into Atkinson's presentence report.

Atkinson did not appeal from the judgment of conviction ordering restitution, but he did move under Fed.R.Crim.P. 35(b) for reduction of his sentence. On this motion, counsel for Atkinson argued that the restitution order should be vacated as inappropriate in light of Atkinson's troubled past and dim prospects for the future. Atkinson had been a heroin addict for most of his life and had minimal employment experience. In addition, counsel averred that, in light of Connecticut's sentencing procedures, the earliest Atkinson would be released from prison was at age 55. Given his drug addiction, dearth of work experience and skills, and probable age upon release, counsel argued that Atkinson could not possibly pay the restitution amount of nearly $30,000 and suggested that the burdens imposed by that order would negatively affect Atkinson's attitude upon release. That motion and a subsequent motion to reconsider the motion for reduction of sentence, on which oral arguement was heard, were both denied, leading to this appeal.

## DISCUSSION

A. *Section 3580(a).*

Atkinson first asserts that the district judge erred by failing to consider all the stated factors in 18 U.S.C. § 3580(a). That section directs that:

> The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, *shall consider* the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3580(a) (emphasis added). Atkinson contends that the district judge ignored the statutory directive to consider the financial condition of the defendant and, instead, simply ordered restitution of the undisputed amounts claimed by the banks in their victim impact statements. Arguing that the VWPA envisions a balancing of factors, Atkinson alleges that the district judge's findings were inadequate.

The third circuit has recently used its supervisory power to require district courts "to make specific findings as to the factual issues that are relevant to the application of the restitution provisions of the VWPA." *United States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985). Believing that such fact finding would unnecessarily encumber a sentencing proceeding, we respectfully decline to follow the course taken by our third circuit colleagues. The plain language of section 3580(a) requires only that the district judge "consider" the listed factors; there is no requirement, as urged by defendant, that specific findings be made on each factor. Nor would specific findings on any factor other than the amount of the loss seem to be of much assistance in arriving at a particular dollar amount of restitution. Like other aspects of sentencing, restitution orders require an exercise of discretion within the legislative parameters provided for the court's consideration, *see United States v. Ciambrone,* 602 F.Supp. 563, 566 (S.D.N.Y.1984), and this requires a delicate balancing of diverse, sometimes incomparable factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a "hunch". In such a context, detailed findings on each statutory factor would be worse than useless; they would be misleading because they would not reflect the judgmental process actually traversed by the court. Therefore, the most a district judge should be required to do before imposing a sentence of restitution is to give consideration to all the material that would be relevant under section 3580(a).

■ It would be possible to interpret the district judge's language at the sentencing hearing on September 7, 1984, as indicating, erroneously, that the mere filing by the banks of victim impact statements is sufficient to support an order of restitution regardless of any other conditions. However, in fairness we note that Judge Eginton at that time was not so much focusing on the conditions for restitution as he was primarily concerned with the then-undecided question of the constitutionality of the VWPA, and, therefore, invited defendant's counsel to make a Rule 35 motion attacking the restitution order. Coincidentally, however, in an opinion decided the same day as Atkinson was sentenced, this court upheld the constitutionality of the VWPA, *see United States v. Brown,* 744 F.2d 905 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984), making that issue academic for the district court.

Thus, at the subsequent hearing on August 9, 1985 on Atkinson's motion for reconsideration of the motion for reduction of sentence, the district judge's attention was brought more forcefully to Atkinson's allegations that the court had not considered all the elements of section 3580(a). At several points during that hearing the district judge noted and referred to the various elements of the statute that he was required to consider. For example, at one point he noted, "[t]he factors which the Court should consider are the amount of loss sustained by the victim. Of course, I certainly did consider that and put it right on the record, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and any other factors the Court deems appropriate." Appellant's appendix at 55. Most significantly, with this information at his disposal, Judge Eginton stated on the record that he had considered all the statutory factors. This demonstrated sufficient consideration of the statutory factors, and no specific findings of fact were necessary.

■ Atkinson further argues that in light of his personal history, even if all the appropriate statutory elements were considered, the district court nevertheless abused its discretion by ordering Atkinson, who was indigent, to make restitution in the total amount of $29,813.76. After stating he had considered all the relevant factors, the district judge expressly declined to order restitution of less than the total undisputed amount claimed by the banks, concluding that any balancing of the factors arguing for a compromise figure

should occur not at sentencing but at the time of any future attempt to enforce the restitution order. Referring to a tenth circuit decision in which a compromise order was upheld, *United States v. Richard,* 738 F.2d 1120, 1123 (10th Cir.1984), Judge Eginton stated:

> They're saying, well, we're going to take into account the demands of the people who want the restitution, but we're also going to take into account the ability to pay, and so on. They jumble up all these factors, then they come out with what looks to be a completely compromised figure, and you don't know what the basis of their ... figure is at all. It looks to me like a pure balancing of all these factors. That type of balancing in my judgment ought to be made in the future.

Appellant's appendix at 63. In this view of the statutory scheme, the district court erred.

Congress recognized that restitution orders were being infrequently used and noted that "federal criminal courts have gone the way of their state counterparts, reducing restitution from being an inevitable if not exclusive sanction to being an occasional afterthought." S.Rep. No. 532, 97th Cong.2d Sess. 30, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2536. Therefore, the purpose of the restitution provision of the VWPA is to require restitution whenever possible. "The premise of the section is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make goods [sic], to the degree possible, the harm he has caused his victim." *Id.*

Nevertheless, congress did not intend that restitution would compensate the victim's loss exactly in every case. Addressing the concern that district judges would have to determine the amount owed in some cases, congress provided: "The court shall impose an order of restitution to the extent that such order is as fair as possible to the victim and the imposition of such order will not unduly complicate or prolong the sentencing process." 18 U.S.C.

§ 3579(d); *See* S.Rep. No. 532, 97th Cong.2d Sess. 31, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2537. Indeed, we have recognized that at the time of sentencing the "victim may * * * be awarded less than full compensation solely because of the offender's financial circumstances." *Brown,* 744 F.2d at 910; *see also United States v. Kallash,* 785 F.2d 26, 31, (2d Cir.1986).

Moreover, congress plainly envisioned that the time when the balancing of the victim's loss against the defendant's resources and circumstances should occur was when the court was "determining whether to order restitution under section 3579 * * * and the amount of such restitution". 18 U.S.C. § 3580(a). Under this scheme it would unquestionably be proper at sentencing for a district judge, in considering a defendant's present and likely future situations, to order restitution of a lesser amount than that which the victim actually lost. *See Richard,* 738 F.2d at 1123.

The district judge's concern here that any balancing with respect to a compromise figure should be performed at the time of enforcement ignored the fact that congress, by making a restitution order a condition of probation or parole, *see* 18 U.S.C. § 3579(g), envisioned a second balancing at that latter time. In the event a probationer or parolee does not comply with the restitution order, the district judge is confronted with a separate list of considerations that differs from that used at sentencing. "In determining whether to revoke probation or parole, the court or Parole Commission shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay." *Id.* Conspicuously absent from this list is the amount of the victim's loss, which is the first named factor in the balancing required at the time of sentencing.

The balancing required at the time of enforcement, moreover, is constitutionally

circumscribed. "Constitutional objections would be encountered only if the restitution order was enforced at a time when the defendant was unable, through no fault of his own, to comply." *Brown*, 744 F.2d at 911 (citing *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)). Thus, the factor of indigency would take on great improtance at the time any attempt was made to revoke probation or parole for noncompliance with the restitution order.

Clearly, then, congress intended two separate balancing decisions, and the district court's refusal to perform the first one constituted error. A district judge must consider all the factors listed in section 3580(a) at the time of sentencing, and may in his discretion reach a compromise figure based on that consideration.

■ Despite the propriety of a compromise order at the time of sentencing, however, we reject Atkinson's argument here that merely because he is indigent it would be an abuse of discretion to order him to make full restitution. The fact that congress mandated that the balancing occur at the time of sentencing does not automatically mean that a then-indigent defendant must be permitted to make restitution of less than the full amount. Given the circumstances at the time of sentencing, it is no more likely that Atkinson would be able to pay a compromise figure of $10,000 or $15,000, for example, than he would the total amount of $29,813.76.

District judges are not seers and cannot accurately predict a defendant's economic future. We have recognized that it is constitutional to impose financial obligations on "a defendant who is indigent at the time of sentencing but subsequently acquires the means to discharge his obligations." *Brown*, 744 F.2d at 911; *cf. United States v. Pagan*, 785 F.2d 378, 381 (2d Cir.1986) (constitutional to impose a special assessment under 18 U.S.C. § 3013 on an indigent). In fact, "[r]ecognizing that indigency may be temporary, Congress provided for payment of restitution during a period of up to five years after the completion of any prison sentence imposed." *Brown*, 744

F.2d at 911 (citing 18 U.S.C. § 3579(f)(2)(B)).

Since many defendants who are sentenced to terms of incarceration do not have the funds to make restitution immediately, restitution orders would be severely limited if district judges did not have discretion to discount the importance of present indigency in performing the statutory balance. Although there may be little chance that it will ever be made, if full restitution is not ordered at the time of sentencing, an indigent defendant would evade the statutory purpose of making the victim whole in the event he should subsequently come into sufficient funds. However, because the district court here eschewed consideration of a compromise figure at sentencing, we remand for reconsideration of the order of restitution.

B. *Third-Party Payments.*

■ Atkinson claims that the amount of restitution he has been ordered to pay should be decreased or eliminated, in part, because the victim banks are either insured or in a position to write off their losses. This argument is unavailing. Congress has mandated that restitution not result in double recoveries by crime victims, *see* 18 U.S.C. § 3579(e)(1), but the fact of third-party payments need not reduce the restitution amount defendants are ordered to pay, since restitution to the third party may also be ordered. Congress noted that "[t]ypically, sentences in both federal and state courts are less likely to require restitution if the victim was insured. The common practice of not permitting insurance companies to be subrogated to the rights of insured victims means that some offenders are being relieved of their debts. It also means that insurance companies and the insurance-buying public are being asked to pay off the offender's debt." S.Rep. No. 532, 97th Cong.2d Sess. 31, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2537.

To remedy this unfairness congress included in the VWPA a provision that

[t]he court shall not impose restitution with respect to a loss for which the victim has received or is to receive compen-

sation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation. An order of restitution shall require that all restitution to victims under such order be made before any restitution to any other person under such order is made.

18 U.S.C. § 3579(e)(1). Thus, defendants may be deprived of any benefit from the fact that their victim was insured by a third party, but victims as a group were preferred as beneficiaries of the restitution over any third-party claimants. Significantly, though, and this seems to have been overlooked below by the defendant, the victims, the government, and the court, under this statute it is imperative that restitution not be imposed without the court's considering third-party payments. *See United States v. Durham*, 755 F.2d 511, 514–15 (6th Cir.1985). Since the district court failed to address whether any third-party payments have been or will be made to any of the banks as reimbursements for the losses sustained in the robberies, we include in our remand to the district court a direction for some consideration of third-party payments under section 3579(e)(1).

This matter is remanded to the district court for further proceedings in accordance with this opinion.