**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James D. WAINWRIGHT,**
**Defendant–Appellant.**

**No. 90–3305.**

United States Court of Appeals,
Tenth Circuit.

July 9, 1991.

Julie A. Robinson, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with her on the brief), D. Kan., Kansas City, Kan., for plaintiff-appellee.

David J. Phillips, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with him on the brief), Kansas City, Kan., for defendant-appellant.

---

Before ANDERSON, BARRETT and TACHA, Circuit Judges.

BARRETT, Senior Circuit Judge.

James D. Wainwright ("Wainwright") appeals from a restitution order imposed following his plea of guilty to one count of bank fraud in violation of 18 U.S.C. §§ 2 and 1344.

On May 8, 1990, Wainwright and Margaret J. Moore ("Moore") were charged in a seven-count indictment accusing the two of "devis[ing] and intend[ing] to devise a scheme or artifice to obtain monies, funds, or credits owned by and under the custody and control of" six different banks in the District of Kansas between September 4, 1987, and January 22, 1988. (R., Vol. I, Tab 1 at 2).[1] The indictment charged that the defendants accomplished their scheme by "obtain[ing] stolen or worthless checks, forg[ing] signatures thereon, and cash[ing] or split deposit[ing] the checks by using false or fraudulent identification cards or documents." *Id.*

On July 9, 1990, Wainwright entered a plea of guilty to Count 7 of the indictment, which alleged that he and Moore "executed and attempted to execute" a scheme to defraud the Mid–American Bank of Roeland Park on October 2, 1987. At the time Wainwright entered his plea, the government represented to the district court that: on October 2, 1987, Moore entered Mid–American and said she was Laverne McNabb; Moore presented a $1,489.00 check drawn from the account of John Snowden; this check had been stolen when it had been blank; Moore withdrew $700.00 of the check in cash and deposited the balance into McNabb's account; when Moore returned later to get the rest of the money, she was denied access. The government also represented that: a month after the Mid–American incident, Moore was caught trying to cash another check at another bank; she was interviewed and confessed that she had been doing this for some time in association with Wainwright; and she told investigators that Wainwright ran the scheme by getting checks from a letter carrier who had stolen them.

On September 10, 1990, Wainwright appeared for sentencing. In accordance with the plea agreement, the government gave the court no sentencing recommendation. The presentence report indicated that the loss suffered by the six banks listed in the indictment totaled $9,927.00. This total included Mid–American's loss of $700.00. The presentence report also indicated that: Wainwright had no income, assets, monthly expenses, outstanding liabilities, or verifiable employment history; Wainwright had supported himself in the past through illegal activity; he had court-appointed counsel; and he could be considered indigent for the purpose of imposing a fine.

The district court sentenced Wainwright to five years imprisonment under Count 7 of the indictment. The court also ordered Wainwright to pay a total of $4,963.00 restitution under the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3579, 3580 (recodified at 18 U.S.C. §§ 3663, 3664), which states that "a defendant convicted of an offense" may be ordered to "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). According to the court, the $4,963.00 restitution order represented half of the losses suffered by all the banks identified in the indictment and included $350.00 of the $700.00 lost by Mid–American. Finally, the court assessed Wainwright $50.00 as to Count 7 pursuant to 18 U.S.C. § 3013 and, upon the government's motion, dismissed Counts 1 through 6. Wainwright did not object to the imposition or amount of restitution.

On appeal, Wainwright asserts that the district court imposed an illegal sentence and thus committed plain error when it imposed a restitution order involving losses not related to Count 7, the only count of

---

**1.** The subject banks were as follows: Guaranty State Bank (Count 1); Security Bank (Count 2); Commercial State Bank (Count 3); Industrial State Bank (Count 4); Brotherhood Bank and Trust (Counts 5 and 6); and Mid–American Bank of Roeland Park (Count 7).

which he was convicted.[2] The government counters that, because Wainwright failed to object at sentencing to the amount of restitution and failed to file a Rule 35, Fed.R.Crim.P., 18 U.S.C. motion for sentence modification, he has waived any right to appellate review of this issue.

■ At the outset, we note that Rule 35, *supra*, provides that the court may correct an illegal sentence at any time. Indeed, the imposition of an illegal sentence constitutes plain error. *United States v. Vance*, 868 F.2d 1167, 1169 (10th Cir.1989). In *Bartone v. United States*, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963), the Supreme Court held that the error in enlarging the sentence in the absence of the defendant constituted plain error which can be noticed at any stage. Plain errors or defects affecting substantial rights may be noticed at any stage even though they were not brought to the attention of the trial court. Rule 52(a), Fed.R.Crim.P., 18 U.S.C. Thus, if the district court did impose an illegal sentence in setting Wainwright's restitution order, Wainwright is entitled to relief.

■ Under the VWPA, a sentencing court may order "a defendant convicted of an offense" to "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1). An order of restitution under the VWPA is part of the sentencing process. *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir.1984). An "illegal sentence" is one which is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, *United States v. Becker*, 536 F.2d 471, 473 (1st Cir.1976) (citations omitted), or is a sentence which "the judgment of conviction did not authorize." *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954). *See*

*also United States v. Romero*, 642 F.2d 392 (10th Cir.1981).

■ In *Hughey v. United States*, —— U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990),[3] the Supreme Court held that "the language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey* 110 S.Ct. at 1981. Thus, a § 3663(a)(1) restitution order that encompasses losses stemming from charges not resulting in convictions is unauthorized by the restitution statute. *Id.* 110 S.Ct. at 1985–86. Since illegal sentences include those which "the judgment of conviction did not authorize," *Morgan, supra*, and because the imposition of an illegal sentence constitutes plain error, *Vance, supra*, we must invalidate those portions of the district court's restitution order that stem from conduct unrelated to the offense of conviction. *Hughey*, 110 S.Ct. at 1986. Here, Wainwright pleaded guilty only to the charge that he defrauded Mid–American Bank. Thus, we must direct that the court's restitution order be vacated insofar as it does not apply to Count 7.

Given the plain language of *Hughey*, the government's argument that Wainwright has waived his right to appellate review by failing to object below is without merit. The government, citing to *United States v. Lemire*, 720 F.2d 1327 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), argues that preservation of a sentencing issue on appeal requires comprehensible communication of some sort to the sentencing court to allow the court to correct or modify its error. The government points to *United States v. Novey*, 922 F.2d 624, 629 (10th Cir.1991), where this court stated in dicta, "Ordinarily, [a] defendant's failure to object would preclude review of the issue on appeal."

---

2. Wainwright does not challenge the district court's finding that he would be able to pay the restitution order.

3. *Hughey* was decided four months before Wainwright was sentenced. *Hughey* overruled this court's contrary opinion in *United States v.*

*Duncan*, 870 F.2d 1532, 1537 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989) (permitting court to order restitution for "other criminal acts that had a significant connection to the act for which conviction was had").

However, in contrast to the case at hand, neither *Lemire* nor *Novey* held that the district court committed plain error in sentencing. While we recognize the general rule stated in *Novey*, our review of *Hughey* mandates our holding today.

In *Adams v. United States*, 375 F.2d 635, 638 (10th Cir.1967), we quoted the following from *United States v. Pridgeon*, 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631 (1894), as authority to remand for correction/modification of sentence:

> [T]he imposition of a sentence in excess of what the law permits does not render the legal or authorized portion of the sentence void, but only leaves such portion of the sentence as may be in excess open to question and attack.

We REMAND to the district court with directions to VACATE its restitution order with the exception of the $350.00 to be paid to Mid–American. We AFFIRM the district court in all other respects.